JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, James and Carleen Smith, appeal the trial court's judgment that plaintiffs, Richard and Caroline Mapes, are entitled to continue to use a strip of land running parallel to both plaintiffs' and defendants' property as a common driveway. We affirm the judgment of the trial court for the reasons that follow.
 {¶ 2} In December 2001, plaintiffs filed a verified complaint for both preliminary and permanent injunctive relief, as well as declaratory relief. In their complaint, plaintiffs sought a declaration that a strip of land used as a common driveway between the parties constituted an implied easement. Simultaneous with the filing of their complaint, plaintiffs also filed motions for a preliminary injunction and a temporary restraining order. Thereafter, defendants filed their answer and a counterclaim which also sought declaratory relief concerning the parties' rights to the same portion of land.
 {¶ 3} In February, 2002, the trial court held a hearing on plaintiffs' complaint, their motions and defendants' counterclaim. During the hearing both parties presented testimonial and documentary evidence. The facts based on that evidence are as follows.
 {¶ 4} In January 1998, plaintiffs purchased real property located at 351 East Washington St., Chagrin Falls, Ohio ("351"). Defendants purchased the parcel located at 347 East Washington ("347") in July 1998. 347 and 351 are adjacent and contiguous to one another. Prior to either party's purchase, however, 347 and 351 were unified and owned as one piece of property by David and Patricia Hoopes. The Hoopes' property was identified as 347. Since at least 1957, the Hoopes used a strip of land running in front of and between the two parcels as a driveway. Then, in May 1966, the Hoopes split the property[1] into 347 and 351 when Kathryn Heinsohn purchased 351. After Heinsohn's purchase, access to 347 and 351 continued to be by way of the same driveway. The Hoopes and Heinsohn memorialized their agreement to use the strip as a common driveway, but the agreement was never recorded. In the agreement, the driveway was referred to as an easement and right of way.
 {¶ 5} So that both parcels would receive utility service,[2] the Hoopes and Heinsohn executed reciprocal utility easements on a thirteen-foot wide piece of land which runs parallel to the driveway. Both utility easements were recorded, and gas meters for each parcel were installed on the strip. The evidence also shows that there is a line of maple trees on that strip, which add an aesthetic value to it and the neighboring properties. Some of the trees may be as old as seventy years. If a drive were built near them, their root systems would be affected and many of them would die.
 {¶ 6} The Hoopes continued to live at 347 until they sold it to the Lewises, who then sold it to Mr. and Mrs. Enck. When the Encks purchased 347, they agreed, in writing, to allow Heinsohn continued access to her property (351) by way of the same common driveway. In a letter dated July 1988, the Encks specified the following conditions relative to Heinsohn's use of the driveway as access to her property. In the letter, it is stated in relevant part: "This letter will confirm our agreements regarging [sic] your use of our driveway to gain access to your residence. In May 1966, you entered into a written agreement with the former owners of this residence allowing access over our driveway. This agreement terminated when Mr. and Mrs. Hoopes sold the residence to Dr. and Mrs. Lewis.
 {¶ 7} This letter is to confirm our agreement with you that you and your agents, licensees and visitors may have access * * * to and across the driveway owned by Mr. and Mrs. Rudolph Enck and located on what is known as 347 E. Washington St. Chagrin Falls, OH.
 {¶ 8} This agreement is not an easement nor is it to be recorded, but it is a license to provide access for Mrs. Kathryn Heinsohn * * *."
 {¶ 9} Even though the Encks letter is the last written agreement giving access to and from 351 by use of the driveway on 347, the parties stipulate that since 1966 access to 351 has always been by way of the driveway on 347.
 {¶ 10} The record shows that at some point after defendants purchased 347, they urged plaintiffs to start using the thirteen-foot utility easement for a driveway access to their property instead of using the common driveway. Plaintiffs applied for but were denied a permit to construct a driveway on the utility easement because it would violate the city's code requirements. Plaintiffs presented evidence that converting the thirteen-foot strip into a driveway would cause considerable construction difficulties because of the gas, water, and sewer lines located there. The head of the village's building and zoning department testified that the only way plaintiffs would be granted a variance to construct a driveway on the thirteen-foot strip is if it were the only access for 351. He also stated that the continued use of the common drive is a legal, non-conforming but pre-existing use which does not require a variance.
 {¶ 11} Kathy Goldman testified that she lives on the property next to the Smiths and the plaintiffs. She stated that her property and its driveway are directly adjacent to the thirteen-foot strip and that making a driveway of that strip would result in three driveways in a row, all three emptying out onto East Washington Street. Goldman announced she would oppose any variance to turn the strip into a driveway. She stated she has safety concerns because there is a school right across the street and the children would find it difficult to contend with vehicles coming from or turning into three driveways instead of the two that are there now. Goldman also stated that she would oppose any driveway variance, because the trees on the thirteen-foot strip add beauty and privacy to her property.
 {¶ 12} After the hearing, the trial court determined that all the various "owners of both properties have continued to use the common driveway for a continuous period of time and it was so obvious that it was meant to be permanent." The trial court granted plaintiffs' request for permanent injunctive relief[3] and concluded that the common driveway historically shared by 347 and 351 constituted an implied easement for the beneficial use of 351. It is from this judgment defendants appeal and assign one error for our review.
 {¶ 13} "The trial court erred in finding an implied easement for the beneficial use of plaintiff's property."
 {¶ 14} Defendants contend the trial court misapplied the facts in this case to the law regarding easements. According to defendants, the court erred by entertaining as relevant any of the facts occurring after 1966 when the Hoopes first divided their property into two parcels. We find no authority nor do defendants cite any legal support for this position. The law relating to easements by implication requires consideration of not only what the owners intended at the time they sever their unity of ownership, but also what occurs between subsequent owners of the dominant and servient estates still burdened by an alleged easement by implication. Campbell v. Great Miami Aerie No. 2309,Fraternal Order of Eagles (1984), 15 Ohio St.3d 79; Panini, Inc. V. 1078Old River Road, Inc. (May 20, 1999), Cuyahoga App. No. 741249.
 {¶ 15} In 1984, the Ohio Supreme Court decided Campbell v. GreatMiami Aerie No. 2309, Fraternal Order of Eagles (1984), 15 Ohio St.3d 79. In Campbell, the Court relied on and further explained its earlier decision in Ciski v. Wentworth (1930), 122 Ohio St. 487, in which it set forth the elements necessary to establish an implied easement: "While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only."Campbell, supra, citing Ciski, paragraph one of the syllabus.
 {¶ 16} The Court in Campbell then went on to explain: "An implied easement must be `apparent, continually used, and reasonably necessary to the use and enjoyment of the land.' Baker v. Rice (1897), 56 Ohio St. 463, syllabus. It is necessary for the advocate to prove that his client's property is `visibly dependent' upon the alleged easement. Natl. ExchangeBank v. Cunningham (1889), 46 Ohio St. 575, paragraph one of the syllabus. Finally, the use which serves as the basis for an implied easement upon the severance of ownership must be `continuous, apparent, permanent and necessary.'" Campbell, supra at 81.
 {¶ 17} The Court reiterated the well-settled rule "that an equitable easement is not enforceable against a bona fide purchaser for value who has no actual or constructive notice of the easement."Campbell, supra at 81, citing Renner v. Johnson (1965), 2 Ohio St.2d 195,199.
 {¶ 18} In the case at bar, defendants devote much of their attention to the first element discussed in Ciski. Defendants urge that the Hoopes always intended the thirteen-foot strip of land to be the driveway for 351, not the common driveway. Defendants argue that at the time the Hoopes parcel was split in two, the Hoopes intended to sell 351 with an unrestricted thirteen-foot easement on which the purchaser could build a driveway.
 {¶ 19} According to defendants, the written agreement between the Hoopes and Heinsohn confirms their theory that the Hoopes sold 351 in fee simple with no restrictions on what any purchaser after Heinsohn could do with the thirteen-foot easement. Without a written agreement otherwise, defendants argue, the Hoopes knew Heinsohn could construct a driveway on the thirteen-foot strip and that is why they needed her to agree to continue to use 347's property as a common driveway.
 {¶ 20} Additionally, defendants point to the fact that the common driveway was never recorded as is required for an easement. According to defendants, the Encks letter, which allows Heinsohn to continue to use the common driveway and which stated they were not granting an easement, proves that Heinsohn's use of the common drive was never meant to be anything but an accomodation to her so that she did not have to incur the expense of constructing her own driveway on the thirteen-foot strip belonging to 351.
 {¶ 21} We reject each of defendants' arguments because the threshold focus must be on the land used as the common driveway, not the thirteen-foot utility easement. The record shows that before the Hoopes' unity of ownership was severed in 1966, the strip of land had been used as a driveway since at least 1957. This nine-year practice indicates that such use was apparent and continual and meant to be permanent. After the Hoopes split the property into 347 and 351 in 1966, moreover, all the various and subsequent owners continued to use the strip as the common driveway for both parcels.
 {¶ 22} Defendants admit they knew they shared a common drive with 351, even before they purchased 347. This admission thus eradicates any claim by the defendants that they were bona fide purchasers of the property. Three years later, defendants were still allowing the land to be used as a common drive for both parcels. There is no evidence that the common drive has ever been used as anything but a shared access for both 347 and 351.
 {¶ 23} With respect to whether the driveway easement is reasonably necessary, it is clear that it is the only driveway 347 and 351 have ever used. We reject defendants' argument that, despite how the driveway has been used since 1957, it is still possible to construct a new driveway for 351 on the thirteen-foot utility easement. The law relating to implied easements based upon an existing and prior use does not require us to entertain the alternative possibilities defendants present.
 {¶ 24} Regardless of what could be done with the utility easement, the driveway in the case at bar has been proven to be reasonably necessary to the beneficial enjoyment of 351. This conclusion is the most compelling in light of the stipulated fact that the Hoopes and all the subsequent owners of 347 and 351 have, for more than forty years, used the land as a common driveway for both properties. Defendants' sole assignment of error is overruled and the judgment of the trial court affirmed.
KENNETH A. ROCCO, P.J., DISSENTS WITH SEPARATE DISSENTING OPINION; ANN DYKE, J., CONCURS.
[1] The Hoopes divided the property by selling off 1.1 acres to Kathryn J. Heinsohn. The separate 1.1 acre parcel carried the 351 East Washington Street address whereas the 347 parcel retained its same address.
[2] The parties agree that the thirteen-foot easement for utilities was recorded as a utility easement in 1967.
[3] The court also granted plaintiffs' motion for a preliminary injunction and defendants' request for declaratory relief.